# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**SONIA R. BUEHRENS,**

     **Plaintiff,**

**vs.**                        **Case No. 1:16cv354-WTH/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the**
**Social Security Administration,**

     **Defendant.**

_____**/**

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On July 12, 2013, Plaintiff, Sonia R. Buehrens, filed an application for

(DIB), alleging disability beginning September 13, 2012, based on low

blood pressure, vertigo, blurred vision, migraines, arthritis in the back, and

gastric condition.[1]  Tr. 15, 169-72, 186, 189-90.[2]  Plaintiff's application was

denied initially on August 27, 2013, and upon reconsideration on October 3,

2013.  Tr. 15, 75-100, 103-13.  On October 21, 2013, Plaintiff requested a

hearing.  Tr. 15, 116-18.  On April 30, 2015, Plaintiff submitted a pre-

hearing brief.  Tr. 39, 268-69.  "The claimant meets the insured status

requirements of the Social Security Act [for DIB] through December 31,

2017."  Tr. 17.

On May 6, 2015, Administrative Law Judge (ALJ) Susan L. Torres

held a video hearing and presided from Baltimore, Maryland.  Tr. 15, 36-63.

Plaintiff appeared in Jacksonville, Florida, and was represented by Robert

Statler, an attorney, during the hearing.  Tr. 15, 36-38, 62.  (On or about

---

[1]  Plaintiff was 55 years old when she allegedly became disabled, Tr. 15, and is currently 60 years old.

[2]  Citations to the transcript/administrative record, ECF No. 11, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

April 30, 2015, Mr. Statler's name was added as an additional representative.  Tr. 167-68.)  Plaintiff was also represented by Stacy Halaby, a non-attorney representative.  Tr. 15, 126-27, 167-68.  Plaintiff testified.  Tr. 40-59. Jeannie Deal, M.S., C.R.C., an impartial vocational expert, also testified.  Tr. 15, 57-62, 165-66 (Resume).

On May 21, 2015, the ALJ entered a decision denying Plaintiff's application for benefits, concluding that Plaintiff was not disabled from September 13, 2012, through the date of the decision.  Tr. 26.

On July 8, 2015, Plaintiff, by current counsel, requested the Appeals Council to review the ALJ's decision.  Tr. 10-11.  On September 23, 2016, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3; *see* 20 C.F.R. § 404.981.  On November 22, 2016, Plaintiff filed a Complaint in this Court seeking judicial review.  ECF No.1.  The parties filed memoranda of law, ECF Nos. 19, 20, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant has not engaged in substantial gainful activity since September 13, 2012, the alleged onset date."  Tr. 17.

2. "The claimant has the following severe impairments: orthostatic hypotension/intolerance, anemia, B12 deficiency, vertigo syndrome, status post gastric bypass, and diabetes mellitus."  *Id.*  The ALJ determined that Plaintiff had *no* limitation in activities of daily living and social functioning, but *mild* limitation in concentration, persistence, or pace.  Tr. 19.  Plaintiff experienced *no* episodes of decompensation that have been of extended duration.  *Id.*  The ALJ determined that Plaintiff's back pain, muscle spasms, and mild osteoarthritis were nonsevere.  Tr. 17-18.  The ALJ also determined that Plaintiff's obesity and anxiety were nonsevere.  Tr. 18.

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 20.

4. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, crouch and crawl.  The claimant must avoid concentrated exposure to loud noise.  She must avoid all exposure to hazards such as heights and moving machinery."  *Id.*

5. "The claimant is capable of performing past relevant work as a sales clerk/cashier [DOT # 290.477-014, light, semi-skilled work, with an SVP of 3] and as an apartment house manager [DOT # 186.167-018, light, semi-skilled work, with an SVP of 5].  This work does not require the performance of work-related activities precluded by the claimant's [RFC]."[3]  Tr. 26, 60.  The ALJ made no

---

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for

step 5 determination.  Tr. 25.  The ALJ considered whether Plaintiff could perform past relevant work in light of the recency and duration of the job and whether they were performed at substantial gainful activity levels.  Tr. 26.  In part, the ALJ noted:

Based on the parameters set forth above, the vocational expert testified the claimant's past relevant work includes that of a sales clerk/cashier (DOT 290.477-014, light, semi-skilled work with an SVP of 3); and as an apartment house manager (DOT 186.167-018, light, skilled work with an SVP of 5).  In response to a hypothetical question at the hearing that reflected the claimant's residual functional capacity, the vocational expert testified that the individual would be able to complete past work as a pawnbroker as the demands of a sales clerk/cashier and as an apartment house manager would not exceed the residual functional capacity.  According to the claimant's testimony, she/he worked as a sales clerk/cashier from April 2007 through September 2012 and as an apartment house manager from January 1998 to February 2002, which satisfies the recency requirement of past relevant work, since it was performed within the past 15 years from the alleged onset date.  This also satisfies the duration requirement since the vocational expert confirmed a sales clerk and cashier has a specific vocational and preparation rating (SVP) of 3, which the DOT describes as being 30 days to 3 months.  In addition, the apartment manager occupation has an SVP of 5, which the

---

irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. § 404.1568(b).  An SVP of 3 means "[o]ver 1 month up to and including 3 months."  Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 5 means "[o]ver six months up to and including 1 year."  Id.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

DOT describes as 6 months to one year. Lastly, in reviewing the claimant's detailed earnings record, his gross wages clearly exceeded the substantial gainful activity levels during the period he worked as a sales clerk, cashier and as an apartment house manager (Exs. 6D; 4E; 10E; 13F). Relying on the vocational expert's testimony and experience, the undersigned finds that the claimant is able to perform her/his past relevant work as a pawnbroker, as generally performed in comparing the claimant's residual functional capacity with the physical and mental demands of this work. Tr. 26.

6. "The claimant has not been under a disability, as defined in the Social Security Act, from September 13, 2012, through the date of [the] decision." *Id.*

## III. Medical and Other Evidence

Plaintiff argues that the ALJ erred in rejecting the opinions of Kristy Breuhl Smith, M.D., and Meredith Wicklund, M.D.,[4] Plaintiff's treating physicians.[5] ECF No. 19 at 22-27.

---

[4] Dr. Smith, with University of Florida Physicians, began treating Plaintiff on September 18, 2012, for various complaints including dizziness and syncope. Tr. 2277-82; *see* Tr. 271-76, 394-400, 484-98, 542-44, 613-17, 625-31, 754-71. Dr. Wicklund, a neurologist with University of Florida Physicians, evaluated Plaintiff for dizziness and headaches on November 20, 2013, and followed up on January 22, 2014. Tr. 599-603, 610-12. The ALJ refers to "Dr. Wicklind," *see, e.g.*, Tr. 25, but the previously identified patient records refer to "Dr. Wicklund." *But see* Tr. 677-82 (Ex. 20), several questionnaires referring to Dr. Wicklind.

[5] As noted by the Commissioner, Plaintiff also argues that the ALJ "had no cause to disregard Dr. Bailey's opinions," ECF No. 19 at 23. ECF No. 20 at 6 n.5. Dr. Bailey is not mentioned elsewhere in Plaintiff's memorandum, *see* ECF No. 19 at 6-9, 23-24, nor in the record. ECF No. 20 at 6 n.5.

The ALJ assessed Plaintiff's RFC and ultimately determined that
Plaintiff was able to perform her past relevant work.  Tr.  20-26.  Plaintiff
does not argue that the ALJ overlooked material evidence when making the
RFC assessment.  The ALJ's material RFC findings, which include the
ALJ's assessment of the opinions of Drs. Smith and Wicklund, are set forth
below.

The ALJ considered Plaintiff's pre-hearing and hearing statements
regarding the intensity and frequency of her symptoms, which she says
causes her disabling limitations.  Tr. 20-21.  The ALJ discussed the medical
evidence pertaining to five diagnosed health-related issues: orthostatic
hypotension ("not a disabling impairment"); anemia ("a severe
impairment"); B12 deficiency ("a severe impairment"); vertigo syndrome ("a
severe impairment"); post-gastric bypass surgery in 2004 ("a severe
impairment"); and diabetes mellitus ("a severe impairment").  Tr. 21-23.

Dr. Smith diagnosed Plaintiff with fatigue, anemia, and an iron
deficiency, and prescribed medication.  Tr. 21.  Dr. Smith diagnosed
Plaintiff "with vertigo and referred the claimant to balance therapy (Ex. 2F,
p. 5)."  Tr. 22, 275.  "Dr. Smith noted the claimant used Fioricet and

balance therapy for orthostasis and vertigo, and physical therapy for low

back pain that along with Mobic, which was effective treatment (Exs. 10F;

3F; 6F; 14F).  In January 2015, the claimant denied any blackouts, which

indicates that her condition is well-controlled (Ex. 22F)."  Tr. 22.  After

discussing these issues, the ALJ noted:

> The evidence indicates that the claimant is not as limited as she
> alleges.  The claimant was scheduled to attend physical therapy,
> but she often canceled or otherwise did not show up (Ex. 21F).  For
> example, physical therapy notes in 2014 indicated that the
> claimant's short-term and long term goals were not assessed or
> met because the claimant did not return in order to complete
> treatment after about a month (Ex. 21F).  Moreover, advice to
> exercise indicates her doctor must believe she is capable of cross
> training (Ex. 22F).  Treatment notes also indicated she had a
> normal gait, though she used a cane (Ex. 16F).  In addition, in
> February 2014, the claimant noted she planned to travel to
> Tennessee for one week, and Dr. Smith noted the claimant was
> able to travel (Ex. 18F).

Tr. 23.

The ALJ considered opinion evidence from State agency medical

consultant's Carlos Suarez, M.D., (as of August 24, 2013, initial RFC

determination, Tr. 81-85 (Ex. 2A)) and Christina Rodriguez, M.D., (as of

October 3, 2013, on reconsideration, Tr. 95-99 (Ex. 4A)).  Tr. 23.  The ALJ

assigned" some weight" to Dr. Suarez's opinion that Plaintiff "could work at

a light exertional level; climb ramps, stairs, ladders, ropes or scaffolds frequently; and balance occasionally.  He also found the claimant should avoid even moderate exposure to hazards due to persistent dizziness (Ex. 2A)."  Tr. 23.  The ALJ determined that Plaintiff's "pain and balance problems indicates greater limitations in the ability to climb ramps, stairs, ladders, ropes or scaffolds, as well as greater limitations in exposure to hazards."  *Id.*  Dr. Rodriguez also determined that Plaintiff could work at a light exertional level and ALJ assigned "some weight," but noted that Plaintiff's "pain and balance problems indicates greater limitations in the ability to climb ramps and stairs, as well as greater limitations in exposure to hazards" similar to the ALJ's consideration of the opinion of Dr. Suarez. *Id.*

The ALJ returned to a discussion of the medical evidence with Dr. Smith's assessment as of September 18, 2012, that Plaintiff "should remain out of work until her dizzy spells improve."  Dr. Khalid wrote a note dated September 13, 2012, to excuse Plaintiff from work through September 18, 2012.  Tr. 24.  "These opinions receive limited weight because they only assess the claimant's condition for a period shorter than

12 months." *Id.* Before discussing Dr. Smith's patient notes in detail, the ALJ noted that Dr. Burke found Plaintiff would likely do very well "[a]s long as the claimant assumes a sitting or supine position as soon as she begins to develop any symptoms [presumably dizziness]." *Id.* The ALJ gave this opinion "some weight because although it does not provide a specific function-by-function analysis, it is consistent with the claimant's physical therapy notes." *Id.*

The following findings pertain to the ALJ's discussion of other patient notes from Drs. Smith and Wicklund.

> [In August 2013] Dr. Smith found that the claimant has had physical limitations since November 2010, including difficulty walking on her heels and toes and she cannot not squat or rise from a squatting position due to orthostatic hypotension, but noted she is able to perform tasks. She also determined the claimant could be unsteady due to orthostatic hypotension, status post gastric bypass and autonomic dysfunction. She explained that the claimant's orthostatic changes affect her multiple times per day, including her ability to stand, walk and change positions. The treating physician also found that her pain is consistent with objective findings, and though it affects functioning, it does not preclude the claimant's ability to function. Dr. Smith is of the opinion the claimant requires complete freedom [to] rest frequently without restriction. She determined the claimant's symptoms constantly interfere with her ability to maintain attention and concentration to sufficiently complete tasks in a timely manner and that the claimant would likely be absent from work more than 2 days per month due to her impairments or treatment.

She concluded that the claimant's orthostatic hypotension is her most limiting ailment and precludes her from most jobs because she has dizzy spells and presyncopal episodes related to position changes (Ex. 10F).

In 2014, Dr. Smith determined that in an eight-hour workday, the claimant could sit for 8 hours but not stand or walk due to dizziness with standing. She also found that the claimant could lift or carry up to 5 pounds due to fibromyalgia and deconditioning. Dr. Smith is of the opinion the claimant could occasionally climb, kneel, crouch, stoop and crawl, as well as never balance due to dizziness when changing positions and overall deconditioning that has led to generalized weakness. In addition, she found that the claimant has difficulty reaching high objects because of dizziness and problems with the ability to push or pull deconditioning. She noted that the claimant should [be] limited in exposure to noise due to migraines and in exposure to moving machinery and heights such as driving because of orthostatic hypotension. Moreover, she found that the claimant would likely be absent from work more than 2 days per month due to her impairments or treatment. She noted that the claimant has unpredictable attacks of balance disturbance that occur without any identifiable stimulus. In addition, the attacks cause extended periods of incapacity in which the claimant is unable to pay attention, concentrate or remember, and the claimant needs to lie down during or after an attack (Ex. 17F).

In April 2014, Dr. Smith noted the claimant's has complex medical issues such that she is at high risk of morbidity and mortality (Ex. 18F, p. 16). This opinion, in addition to the 2 preceding paragraphs, indicate that in Dr. Smith's opinion, the claimant has disabling functional limitations. How3ever [sic], the undersigned assigns limited weigh[t] to these opinions, because it is not supported by objective evidence indicating negative findings, physical examinations, and medical notes from Dr. Smith that the claimant's

limitations are in part due to deconditioning.[6]

In June 2014, Meredith Wicklind, M.D. [*see supra* at n.4] determined that the claimant's fatigue seriously impairs her ability to function on a constant basis. Stress contributes to the severity of the claimant's fatigue, and her fatigue interferes with the ability to deal with work stresses. She found that the claimant would likely be absent from work more than 2 days per month due to her impairments or treatment. Dr. Wicklind determined the claimant requires one 10-minute rest period per hour. She also determined the claimant is incapable of sedentary work on a sustained and full-time basis. She noted that the claimant has unpredictable attacks of balance disturbance that occur without any identifiable stimulus. In addition, the attacks cause extended periods of incapacity in which the claimant is unable to pay attention, concentrate or remember, and the claimant needs to lie down during or after an attack. Moreover, she found that the claimant would likely be absent from work more than 2 days per month due to her impairments or treatment. She also found that the claimant could lift or carry up to 5 pounds. In her opinion, the claimant could lift or carry 5 pounds and sit for 8 hours, but not stand or walk. Dr. Wicklind is of the opinion the claimant could occasionally climb, kneel, crouch, stoop and crawl, as well as

---

6 The term "deconditioning" has been defined by several courts. *See, e.g.*, King v. Colvin, No. 12 C 9280, 2014 U.S. Dist. LEXIS 59463, at *12 n.7 (N.D. Ill. Apr. 29, 2014) ("'Deconditioning' means 'a state of prolonged underuse of muscles.'" (citation omitted)); Ramsey v. Colvin, Case No. 4:12-CV-1003-NAB, 2013 U.S. Dist. LEXIS 137291, at *13 n.3 (E.D. Mo. Sept. 25, 2013) ("Deconditioning means to cause or lose fitness or muscle tone, especially through lack of exercise." (citation omitted)); Furtado v. Astrue, C.A. No. 07-387ML, 2008 U.S. Dist. LEXIS 56499, at *31 n.3 (D. R.I. July 25, 2008) ("Although the ALJ does not define the term 'deconditioning,' the Court assumes that she means that Plaintiff's lack of activity resulted in him becoming 'out of shape'"). "Deconditioning" has also been defined as "a change in cardiovascular function after prolonged periods of weightlessness, probably related to a shift of a quantity of blood from the lower limbs to the thorax, resulting in reflex diuresis and a reduction of blood volume." Dorland's Illustrated Medical Dictionary 475 (32nd ed. 2012). The ALJ considered whether Plaintiff's impairments or combination of impairments met or equaled Listing 4.00. Tr. 20. Plaintiff does not argue that this determination was erroneous.

never balance due to dizziness.    She found that the claimant has problems with reaching, pushing and pulling, as well as restrictions in exposure to heights and moving machinery due to dizziness (Ex. 20F).  This opinion receives limited weight because the claimant was repeatedly encouraged to exercise.  In addition, medication relieves her symptoms such as migraine headaches, the claimant denied any blackouts, which indicates that her condition is well-controlled, and objective testing freuquently [sic] showed negative findings.

Tr. 24-25.

The ALJ considered the opinions of State agency psychological

consultants, Steven Wise, Psy.D. (as of October 2, 2013, on

reconsideration Tr. 93-94 (Ex. 4A)), and Lawrence Annis, Ph.D. (as of

August 20, 2013, on initial review Tr. 80-81 (Ex. 2A)), and concluded the

RFC assessment.  Tr. 25.

State agency psychological consultant Steven Wise, Psy.D. found that the claimant has no limitations in activities of daily living, no restrictions in maintaining social functioning, no restrictions in maintaining concentration, persistence or pace, and she has not had any episodes of decompensation of extended duration (Ex. 4A). Similarly, state agency psychological consultant Lawrence Annis, Ph.D. found that the claimant has no mental medically determinable impairments (Ex. 2A).  These opinions receive significant weight because it is consistent with the claimant's lack of mental health treatment from a psychiatrist or psychologist during most of the period of adjudication.   In addition, the claimant's ability to manage activities of daily living, maintain friendships and watch television for an hour indicate no more than mild limitations in mental functioning.

In sum, the above residual functional capacity assessment is

supported by the evidence.  The claimant's ability to work at a light exertional level is consistent with her ability to do household chores, manage personal care, attend church, prepare dinner, and take a trip.  In addition, her treating physician advised an exercise regimen. The combined effects of pain and balance problems supports a restriction to never climb ladders, ropes or scaffolds, and perform all other postural movements occasionally.  Moreover, her dizziness and balance problems are consistent with a restriction permitting no exposure to hazards such as heights and moving machinery.

Tr. 25.

## IV.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute

its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[7]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in

---

[7]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[8]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the

---

[8] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996, rescinded eff. Mar. 27, 2017) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered the decision. *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).

An ALJ may make this determination either by applying the grids or by

obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-

40; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner

carries this burden, the claimant must prove that he or she cannot perform

the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and

consequently, is responsible for producing evidence in support of her claim.

*See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## V.  Legal Analysis

### The ALJ Properly Considered and Gave Appropriate Weight to the Opinions of Drs. Smith and Wicklund.

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinions of Drs. Smith and Wicklund.  ECF No.19 at 6-12.

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record, resolving conflicts that might appear. 20 C.F.R. § 404.1527.[9]  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole;

---

[9]  On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844.  *See also* 82 Fed. Reg. 15132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844).  These final rules are effective as of March 27, 2017; therefore, they do not apply to the ALJ's decision in this case, issued September 25, 2015.  The Court relies on the regulations in effect at the time of the ALJ's May 2015 decision.  *See supra* at n.8.

(4) whether the opinion is from a specialist and, if it is, it will be accorded

greater weight; and (5) other relevant but unspecified factors.  20 C.F.R.

§ 404.1527(b) & (c).

The opinion of the claimant's treating physician must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).  "'The treating physician doctrine is

based on the assumption that a medical professional *who has dealt with a*

*claimant and his maladies over a long period of time* will have a deeper

insight into the medical condition of the claimant than will a person who has

examined a claimant but once, or who has only seen the claimant's medical

records.' *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added)." *Id.*

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. <u>Phillips</u>, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." <u>MacGregor,</u> 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991). Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating

physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583 (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Substantial evidence supports the ALJ's rationale for assigning limited weight to the opinions of Drs. Smith and Wicklund.  The ALJ considered the relevant portions of the medical evidence and Plaintiff's pre- and post-hearing statements.

The ALJ considered that in October 2013, Plaintiff changed medication to treat her symptomatic orthostatic hypotension and in November 2013, Plaintiff reported significant improvement in her orthostatic hypotension symptoms and denied chest pain, tightness, and heaviness,

nausea, vomiting, diaphoresis, syncope, pre-syncope, orthopnea, PND,

lightheadedness, dizziness, or lower extremity edema.  Tr. 21, 672.

Dr. Burke, a treating cardiologist, determined in November 2013 that

Plaintiff's symptomatic hypotension had resolved and he advised Plaintiff to

continue her current medical regimen.  Tr. 21, 674.

On January 27, 2014, Dr. Smith reported that Plaintiff had not had

blackout spells since the medication change (stopped Florinef and started

Midodrine); Holter monitoring showed no significant arrhythmias; and a tilt

table test was negative and indicated no evidence of autonomic

dysfunction, orthostatic hypotension, neurogenic syncope or carotid

hypersensitivity, as well as negative EKG findings.  Tr. 21, 565 (Sept. 20,

2013, electrophysiology report), 614.  Plaintiff told Dr. Smith that her

dizziness improved and her migraines were better controlled after she

started taking Imitrex.  Tr. 21, 614.

As part of a new patient evaluation, on November 20, 2013,

Dr. Wicklund found that Plaintiff's somewhat low blood pressure with

systolic levels typically around the 100s was not necessarily significant

enough to cause the symptoms Plaintiff described.  Tr. 21, 602.

Dr. Wicklund noted Plaintiff never had any drop in blood pressure or
tachycardia documented associated with her symptoms.  *Id.*  Dr. Wicklund
characterized Plaintiff's condition as "chronic orthostatic intolerance rather
than orthostatic hypotension."  *Id.*  Dr. Wicklund advised Plaintiff to pursue
aerobic exercises treatment to restore physical conditioning and to wear
stockings over her lower limbs and do not change positions quickly.
Dr. Wicklund also encouraged Plaintiff to increase her physical activity, as
deconditioning likely played a role in her symptoms.  Tr. 21, 602-03, 611.

In January 2014, like Dr. Wicklund, Dr. Smith encouraged Plaintiff to
start a walking/exercise program to improve her deconditioning and overall
health, which "should help with her orthostatic intolerance."  Tr. 614, 617.
Plaintiff testified that she was exercising at home, which included walking,
cross training, and aerobic exercises.  Tr. 54.

The ALJ noted an MRI and CT of Plaintiff's head and brain showed
no acute abnormalities.  No findings were made to explain Plaintiff's
dizziness.  Tr. 22, 376.

As a follow-up to Plaintiff's complaints of headaches and orthostasis,
Dr. Wicklund noted in January 2014 that Plaintiff continued to experience

vertigo in addition to her orthostasis when turning over in bed at night and lasting for a few seconds at a time.  Tr. 22, 610.  When Plaintiff was initially evaluated in November 2013, nerve conduction studies and laboratory tests were ordered.  The results of the nerve conduction studies were reviewed and Dr. Wicklund "found them to be unremarkable with no evidence of large fiber polyneuropathy."  *Id.*  The laboratory testing results were not remarkable and previous B12 and vitamin D3 testing was normal. Plaintiff did not have further syncopal episodes since her last office visit. She was taking Imitrex and was "quite pleased with her improvement in her migraine headaches."  *Id.*  Plaintiff was given a handout on left posterior canal benign paroxysmal positional vertigo in order to learn repositioning maneuvers to provide desensitization of the vestiginous sensations.  Tr. 22, 611.  It was further noted that Plaintiff "has never had orthostatic hypotension documented in the office or on a tilt table, though this has reproduced her symptoms."  She was encouraged to increase her physical activity as deconditioning was likely playing a role.  Tr. 611.  Overall, the physical examination results were normal including that Plaintiff was able to arise from a chair without difficulty and her gait and postural stability were

normal.  *Id.*  In January 2015 progress notes from University of Florida Physicians, Plaintiff denied any blackouts so far that year and was able to control her orthostasis by slowly arising.  Tr. 22, 748.

Digressing somewhat, an examination in May 2013 revealed a low back muscle strain and Dr. Smith prescribed medication.  Tr. 487.  During a follow-up examination in August 2013, Dr. Smith noted that Plaintiff had full range of motion in her lumbosacral spine and cervical, a negative straight leg raising test, was able to walk on her heels and toes, and had full (5/5) strength in her upper and lower extremities.  Tr. 18, 550-51, 630.  Dr. Smith reported that physical therapy and medication (Mobic) were helping to relieve Plaintiff's pain.  Tr. 552.  Plaintiff's orthostatic hypotension was rated as severe and orthostatic changes affect her multiple times daily and affected her ability to stand, walk, and change positions.  Tr. 552.  A review of Dr. Smith's treatment records frequently indicate benign physical findings including normal gait, lack of distress, and normal mood and affect. Tr. 279, 396, 486-87, 491, 498, 544, 615, 626, 630, 756, 761, 768-69.[10]

---

[10]  For example, the ALJ noted Dr. Smith's report that Plaintiff was "walking with a cane," but that her gait was normal.  Tr. 23, 615.  In May 2014, Dr. Smith noted Plaintiff's gait was steady and that she did not use "assistant devices."  Tr. 765.  Her mood, affect, and judgment were normal.  "Most energetic [I] have seen her look.  Good

In September and October 2013, Dr. Burke noted that Plaintiff's attention span and concentration appeared grossly normal. Tr. 561, 665. Plaintiff's attention and concentration were deemed "adequate" during the psychiatry initial evaluation in March 2015 and during an outpatient therapy session May 2015. Tr. 837, 840-41, 843, 846. Plaintiff testified she could stay focused on a television show for an hour. Tr. 47. These findings and Plaintiff's testimony are contrary to Drs. Smith and Wicklund's opinion that Plaintiff's pain and fatigue would constantly interfere with her concentration and attention to sufficiently the tasks in a timely manner. Tr. 553, 643-44 (check-off form), 677 (same).[11]

Dr. Smith noted in June 2014 that Plaintiff had been doing well and while she occasionally had dizzy spells - "[s]he knows to stay well hydrated, change positions slowly." Tr. 490. The ALJ noted, in April 2014, Dr. Smith

---

eye contact. Calm." *Id.* On August 27, 2014, Dr. Smith noted Plaintiff's gait was normal, that Plaintiff had normal range of motion in her extremities, and was not using assistive device for walking, although her mood was anxious and judgment normal. She was alert and oriented. Tr. 761.

[11] *See generally* Dixon v. Astrue, No. 5:09-cv-320-RS-EMT, 2010 U.S. Dist. LEXIS 125831, 2010 WL 4942141, at *14-15 (N.D. Fla. Oct. 26, 2010) (ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms).

recommended Plaintiff perform "cross training activities and to avoid

walking as her only form of exercise."  Tr. 23, 768.  In May 2014, Dr. Smith

noted that Plaintiff was doing well, had no recent syncopal episodes, and

her orthostatic hypotension had been "well controlled."  Tr. 764.  (As noted

above, on August 28, 2013, Dr. Smith noted that Plaintiff's "orthoscopic

hypotension" was "severe."  Tr. 552).  The ALJ provided several reasons,

supported by the record, for giving limited weight to the opinions of

Drs. Smith and Wicklund.  Tr. 24-25.

Although the ALJ did not find Plaintiff as limited as opined by

Drs. Smith and Wicklund, the ALJ found significant limitations, which were

accounted for in the RFC findings.  Tr. 20.  For example, the ALJ limited

Plaintiff to light work and this assessment was consistent with Plaintiff's

ability to perform household chores, manage personal care, attend church,

prepare dinner, and fly to and from Tennessee.[12]  Tr. 20, 25, 48-50, 54-55,

184.  The ALJ gave some weight to the State agency medical consultants

---

[12]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

who reviewed the record in August and October 2013.[13]  Tr. 23, 79-85, 93-99.

The ALJ explained that "limited weigh [sic]" was given to Dr. Smith's opinion because it was "not supported by objective evidence indicating negative findings, physical examinations, and medical notes from Dr. Smith that the claimant's limitations are in part due to deconditioning."[14]  Tr. 25.

Further, the ALJ noted Dr. Wicklund's opinion that Plaintiff "has problems with reaching, pushing and pulling, as well as restrictions in exposure to heights and moving machinery due to dizziness," but gave this opinion "limited weight" "because the claimant was repeatedly encouraged to exercise.  In addition, medication relieves her symptoms such as

---

[13]  "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p, eff. Mar. 27, 2017, with substantially similar language).  Their opinions regarding an individual's RFC are entitled to consideration and weight.  20 C.F.R. § 404.1527(e)(2).

[14]  Deconditioning is not a medically determinable physical impairment within the meaning of the Social Security Act.  *See, e.g.*, Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 806-7 (11th Cir. June 3, 2013) (unpublished); Pinkins v. Astrue, Civil Action No: 09-6920 Section: "D" (5), 2010 U.S. Dist. LEXIS 102119, at *27 (E.D. La. Sept. 8, 2010), *approved and adopted by*, 2010 U.S. Dist. LEXIS 102693 (E.D. La. Sept. 24, 2010); Sturgill v. Astrue, Case No. 1:08-CV-687, 2010 U.S. Dist. LEXIS 15933, at *11-12 (S.D. Ohio Feb. 23, 2010).

migraine headaches, the claimant denied any blackouts, which indicates

that her condition as well-controlled, and objective testing freuquently [sic]

showed negative findings." *Id.*

The ALJ's decision is further supported by the opinion rendered by

several non-examining State agency medical consultants, who reviewed

the record and opined that Plaintiff's physical limitations were compatible

with a range of light work.  Tr. 23; *see supra* at 8-9.  The ALJ also relied on

the opinions of the State agency psychological consultants, who also

reviewed the record and opined Plaintiff had no limitations in activities of

daily living, no restrictions in maintaining social functioning, no restrictions

in maintaining concentration, persistence, or pace, and no episodes of

decompensation of extended duration (by Dr. Wise) and "no more than mild

limitations in mental functioning" (by Dr. Annis).  Tr. 25; *see supra* at 13-14.

The ALJ's RFC assessment is consistent with the medical evidence.

Substantial evidence supports the ALJ's consideration and weight given to

the opinions of Drs. Smith and Wicklund.  No error has been shown.

## VI.  Conclusion

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record and the ALJ correctly applied the

law.  Accordingly, it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's application for Social Security benefits be

**AFFIRMED.**

      **IN CHAMBERS** at Tallahassee, Florida, on September 19, 2017.

           s/  Charles A. Stampelos
           **CHARLES A. STAMPELOS**
           **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**